**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**UMBERTO LAURO,**

                             **Plaintiff,**

  vs.                                              6:12-cv-00912
                                                           (MAD)

**COMMISSIONER OF SOCIAL SECURITY,**

                             **Defendant.**

_____

**APPEARANCES:**                         **OF COUNSEL:**

**UMBERTO LAURO**
P.O. Box 4514
Rome, New York 13442
Plaintiff, *pro se*

**COMMISSIONER OF SOCIAL SECURITY**    **BENIL ABRAHAM, ESQ.**
U.S. Social Security Administration
26 Federal Plaza
New York, New York 10019
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 5, 2012, Plaintiff *pro se* Umberto Lauro commenced this action pursuant to 42 U.S.C. § 405(g) seeking review of an unfavorable decision made by the Commissioner of Social Security ("Commissioner") that found Plaintiff at fault for causing a $690.00 overpayment in Supplemental Security Income ("SSI"). *See* Dkt. No. 1. On February 5, 2013, the Court issued an order reversing the Commissioner's decision and remanded the case for further administrative action. *See* Dkt. No. 28. On November 20, 2014, Plaintiff filed a motion to reopen his case with this Court. *See* Dkt. No. 29.

On February 23, 2015, this Court denied Plaintiff's motion to reopen his case because the Commissioner had not issued a final decision. *See* Dkt. No. 36 at 3. On July 15, 2015, administrative law judge ("ALJ") Robert E. Gale issued a partially favorable decision. *See* Dkt. No. 51 at 154-62. On April 18, 2016, the Appeals Council denied Plaintiff's request for review. *See id.* at 149-50. The Court now considers Plaintiff's brief for judicial review of the Commissioner's decision, *see* Dkt. No. 46, and Defendant's brief in response. *See* Dkt. No. 48.

## II. BACKGROUND

In September 2007, the Social Security Administration received an IRS alert of a 2006 W-2G form with Plaintiff's name and New York State driver's license number. *See* Dkt. No. 43 at 9 and 71. The W-2G reported that Plaintiff won $1,963.22 from the Turning Stone Casino on September 16, 2006. *See id.* Plaintiff's income increased as a result of the gambling winnings and he received a notice on February 9, 2008 that stated he was overpaid $690.00 in SSI for September 2006. *See id.* at 32-34. Plaintiff requested a waiver of recovery of the overpayment and claimed that he never received $1,963.22 from Turning Stone Casino; instead, he alleged that he was the victim of identity theft. *See id*. at 62-63. On September 15, 2008, Plaintiff's request for a waiver of overpayment was denied. *See id.* at 38-39; Dkt. No. 53 at 6-7. On November 15, 2008, Plaintiff had a personal conference with Ms. Kraeger, a service representative for the Social Security Administration. *See id*. at 40. After the conference, Plaintiff's request for a waiver of recovery of overpayment was denied again. *See id.* at 41-42. Plaintiff then requested reconsideration of the agency's determination, which was denied on January 8, 2009. *See id*. at 53; Dkt. No. 53 at 15. On January 21, 2009, Plaintiff requested a hearing in front of an administrative law judge. *See id.* at 57.

On February 27, 2009, Plaintiff received a notice stating "even though you are eligible for Supplemental Security Income (SSI) payments, we will not pay you for June 2009 through November 2009." *Id.* at 51. The non-payment of Plaintiff's SSI was a penalty for Plaintiff's second failure to report his gambling winnings. *See id.* at 51-53. On March 17, 2009, Plaintiff requested reconsideration of the penalty, claiming again that he was the victim of identity theft. *See id.* at 54-56. On March 18, 2009, Plaintiff's reconsideration request was denied. *See id.* at 58-60. On March 20, 2009, Plaintiff requested a hearing before an administrative law judge because "I feel that my payments are being stopped unfairly for 6 months and I feel that there is a personal vendetta against me by the Rome SSA office (especially by Mr. Rejman)." *Id.* at 61 (errors in the original).

The request for a hearing was granted and on March 25, 2010, Plaintiff appeared before ALJ Barry Ryan. *See id.* at 129-144. On May 5, 2010, ALJ Ryan issued an unfavorable decision. *See id.* at 15-20. ALJ Ryan found "[t]he beneficiary was overpaid benefits and was not 'without fault' in creation of the overpayment. Therefore, adjustment or recovery cannot be waived. Furthermore, the six month administrative sanction was properly imposed for the time period of June 2009 through November 2009." *Id.* at 20.

Plaintiff appealed ALJ Ryan's decision and on December 16, 2011, Administrative Appeals Judge David A. Tepper granted Plaintiff's request for review. *See* Dkt. No. 43 at 125-28. On April 14, 2012, the Appeals Council reviewed the ALJ's decision and issued a partially favorable decision for Plaintiff. *See id.* at 5-7. In the decision, the Appeals Council adopted the findings of the ALJ with the exception that the Administration "did not have the authority to impose administrative sanctions for the period June 2009 through November 2009 due to the claimant's statements regarding his gambling winnings." *Id*. at 10. On June 5, 2012, Plaintiff

3

filed a civil action in this Court for judicial review of the Appeals Council's finding. *See* Dkt. No. 1.

On February 5, 2013, the Court remanded the case pursuant to sentence six of section 205(g) of the Social Security Act, based on a stipulation by the parties because the agency could not locate Plaintiff's administrative file. *See* Dkt. No. 51 at 233-35. The Appeals Council thereafter remanded the case to an ALJ for a *de novo* hearing on July 22, 2014. *See id.* at 302-05.

On July 15, 2015, ALJ Gale issued a partially favorable decision adopting the earlier Appeals Council's decision. *See* Dkt. No. 51 at 154-62. Plaintiff requested review of ALJ Gale's decision on August 5, 2015. *See id.* at 203-04. The Appeals Council denied Plaintiff's request, which made ALJ Gale's ruling the Commissioner's final decision. *See id.* at 149-50. On June 6, 2016, this Court reopened Plaintiff's case. *See* Dkt. No. 44. Currently before the Court are Plaintiff's brief requesting judicial review of the Commissioner's decision, *see* Dkt. No. 46, and Defendant's brief in response, *see* Dkt. No. 48.

### III. DISCUSSION

**A.   Standard of Review**

Under 42 U.S.C. § 405(g), a plaintiff may request review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party" by a district court. *See* 42 U.S.C. § 405(g). When a district court remands the case back to the Social Security Commissioner, "such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision." *Id.* "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.*

The Court must examine the administrative transcript as a whole to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447 (2d Cir. 2012); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). The Second Circuit has explained that upholding a determination based on the substantial evidence standard where the legal principals may have been misapplied "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, if the record is such that the application of the correct legal principles "could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

"'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the Court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in [its] duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and "'[t]he court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo*

5

review.'" *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). This very deferential standard of review means that "once an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis in original).

**B.     Analysis**

*1. Overpayment*

"In order to be eligible for SSI an individual must be aged, blind or disabled and have income and 'countable resources' below specified statutory amounts.'" *Singer v. Sec. of Health & Human Servs.*, 566 F. Supp. 204, 206 (S.D.N.Y. 1983) (citing 42 U.S.C. § 1382(a)). In order to be eligible to receive SSI benefits, an individual who lives with his or her spouse may possess no more than $3,000 in resources (including the resources of the spouse), and an individual who does not live with his or her spouse may possess no more than $2,000 in resources. *See Rasheed v. Astrue*, No. 07–CV–2726 (NGG), 2010 WL 3036795, *3 (E.D.N.Y. July 30, 2010); 42 U.S.C. § 1382(a)(3); 20 C.F.R. § 416.1205(c). Resources are defined as "cash or other liquid assets or any ... personal property that an individual (or spouse ... ) owns and could convert to cash to be used for his ... support and maintenance." 20 C.F.R. § 416.1201(a). In determining the resources a claimant owns, there are exclusions for certain items, including a single vehicle and personal residence. *See* 42 U.S.C. § 1382b.

"An overpayment is a payment of an amount more than the amount due for a given period... If an individual receiving SSI benefits is incorrectly paid more than the amount he is entitled to, the Commissioner is authorized to seek a repayment of the excess amount of benefits." *Mesias v. Doe*, No. 11–CV–2373, 2012 WL 3704824, *3 (E.D.N.Y. Aug. 24, 2012) (citing 20

6

C.F.R. §§ 416.537 & 416.550; 42 U.S.C. § 1383(b)(1)(A)); *see also* 42 U.S .C. § 404 (providing in relevant part that "[w]henever the Commissioner ... finds that more or less than the correct amount of payment has been made ... proper adjustment or recovery shall be made ...."). Federal regulations "allow[ ] for waiver of recovery of an overpayment ... where (1) an overpayment has been made to an individual who is without fault, and (2) when adjustment or recovery would either defeat the purpose of the Act, or be against equity and good conscience." *Hannon v. Barnhart*, 134 Fed. Appx. 485, 486 (2d Cir. 2005) (internal quotation marks omitted) (quoting 20 C.F.R. § 404.506). If the individual cannot satisfy the first prong of the analysis, namely that he or she was without fault, then the second prong need not be considered. *See Chlieb v. Heckler*, 777 F.2d 842, 846 (2d Cir. 1985) (citations omitted).

Fault will be found when an incorrect payment "resulted from" one of the following: "(a) Failure to furnish information which the individual knew or should have known was material; (b) An incorrect statement made by the individual which he knew or should have known was incorrect (this includes the individual's furnishing his opinion or conclusion when he was asked for facts), or (c) The individual did not return a payment which he knew or could have been expected to know was incorrect." *Howard v. Secretary of Health & Human Servs.*, 741 F.2d 4, 7-8 (2d Cir. 1984) (citing 20 C.F.R. § 416.552). "No showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault . . . The fact that the SSA may have been at fault in making the overpayment does not relieve the recipient from liability if the recipient was also at fault." *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983) (internal citation omitted). The burden of proof to show that waiver of overpayment should be applied falls on the plaintiff. *See Hannon*, 134 Fed. Appx. at 487 (citing 42 U.S.C. § 404(b); 20 C.F.R. §§ 404.506, 404.507).

7

In the present matter, Plaintiff appeals the unfavorable aspect of the ALJ's decision finding that Plaintiff "was overpaid benefits in the amount of $690.00 for September 2006 and was not 'without fault' in the creation of the overpayment." Dkt. No. 46 at 1-2. In his decision, the ALJ identified that the "General issue to be resolved is whether the claimant was without fault in the creation of an overpayment in September 2006 and, if so, whether recovery or adjustment of the overpayment can be waived." Dkt. No. 51 at 157-58. As relevant here, in September 2007, an IRS alert was received identifying Plaintiff as the recipient of gambling winnings in the amount of $1,963.22 on September 16, 2006 from the Turning Stone Casino in Oneida, New York. *See id.* at 159. The gambling winnings rendered Plaintiff ineligible for his SSI payment that month, causing a $690.00 overpayment. *See id.* Thereafter, Plaintiff requested a waiver of recovery of this overpayment. *See id.*

According to the ALJ, the SSA had previously received an IRS alert in October 2006 which identified Plaintiff as a recipient of gambling winnings of $2,000.00 in April 2005. *See id.* at 160. In May of 2007, the overpayment was waived and Plaintiff was given his reporting responsibilities regarding gambling winnings. *See id.*

When Plaintiff filed the request for waiver on February 27, 2008 for the September 2006 overpayment, he claimed that he never received the gambling winnings. *See* Dkt. No. 51 at 160. Rather, Plaintiff alleged that he was a victim of identity theft, naming Claire Nolan as the individual who used his personal documents to commit fraudulent activities. *See id.* On the waiver request form, Plaintiff stated that Ms. Nolan was his friend and that he filed a police report regarding this alleged identity theft. *See id.*; Dkt. No. 43 at 79. On June 19, 2008, the Administration requested supporting documentation regarding this police report and the outcome

8

of the investigation. *See id.* On October 1, 2008, Plaintiff signed a statement claiming to have no knowledge of an individual named Claire Nolan. *See id.*; Dkt. No. 43 at 76-77.

ALJ Gale evaluated the evidence and determined that Plaintiff was not without fault in causing the $690.00 overpayment in SSI. First, as discussed, ALJ Gale noted that Plaintiff had previously won $2,000.00 from Turning Stone Casino that he failed to report. *See* Dkt. No. 51 at 160. The recovery of the first overpayment was waived in May 2007 and, at that time, Plaintiff was notified regarding his reporting responsibilities for gambling winnings. *See id.* It was after this warning, in September 2007, that the SSA received the W-2G which reported $1,963.22 in gambling winnings from the Turning Stone Casino with Plaintiff's signature. *See id.* at 159; *see also* Dkt. No. 43 at 71. The SSA determined that the gambling winnings increased Plaintiff's income and led to a $690.00 overpayment in SSI for September 2006. *See* Dkt. No. 51 at 159. Plaintiff contested this decision and alleged he was a victim of identity theft, initially naming Claire Nolan as the woman who stole his identity. *See id.* at 160. Thereafter, Plaintiff changed his story several times, first by denying knowledge of anyone by the name of Claire Nolan and then claiming that a friend of his ex-wife stole a copy his license from his home. *See* Dkt. No. 43 at 63.

Based on the information in the record, the Court finds that the ALJ properly concluded that Plaintiff was not without fault in causing the overpayment. The overwhelming evidence demonstrates that Plaintiff knowingly made false statements to conceal his winnings.[1]

---

[1] As ALJ Gale concluded, Plaintiff's story continually changes. *See* Dkt. No. 51 at 160. The inconsistencies are even more apparent after reviewing the procedures in place at Turning Stone Casino to collect money. For a winner to collect, he or she must produce photo identification. *See id.* at 160; *see also* Dkt. No. 43 at 64-65. A district manager for the SSA reported, "[w]e contacted the Casino and verified that when someone wins in the amount of $1100.00 (minimum), it is mandated they show picture ID to claim their prize winnings[.] The

(continued...)

### *2. Plaintiff's other allegations*

Plaintiff makes several other allegations in his brief including a claim that he "cannot read or write English." Dkt. No. 46 at 1. Plaintiff did not have any language difficulties in the four hearings that ALJ Gale presided over, and the prior ALJ who held the first hearing noted no language problems. *See* Dkt. No. 51 at 161. Moreover, Plaintiff waived his right to have an interpreter on May 1, 2015. *See id.* at 185-86. In doing so, Plaintiff explained that he understood English as long as it was spoken slowly. *See id.* at 186. Additionally, Plaintiff did not require an interpreter for any of the multiple telephone conversations Plaintiff had with ALJ Gale's staff and, as ALJ Gale noted, Plaintiff "submitted multiple written statements and affidavits at the hearing level and to the District Court setting forth his grievances and position on various issues." *Id.* at 161. As such, the Court finds that Plaintiff's professed inability to understand English is entirely belied by the record. Plaintiff was repeatedly offered the services of an interpreter and refused. As such, this argument provides no basis for relief.

Plaintiff has also claimed that ALJ Gale should be dismissed because he was "under investigation and [ALJ Gale] should withdraw the case at this point, until the investigation is over." Dkt. No. 51 at 169. Throughout the proceedings, both before this Court and at the administrative level, Plaintiff has alleged that various individuals are either biased or conspiring against him. However, the record makes clear that the ALJs assigned to Plaintiff's matter

---

[1](...continued)
picture on the ID must match the person claiming the winnings and those winnings are then posted to their social security number." Dkt. No. 43 at 66. Turning Stone Casino indicated that a New York State driver's license and a social security card were used to collect the $1963.22 disputed by Plaintiff. *See id.* at 58. The agency contacted the New York Department of Motor Vehicles and confirmed that Plaintiff's license was still active and never replaced. *See id.* The agency also confirmed that Plaintiff's social security card had not been replaced since 1994. *See id.*

repeatedly granted Plaintiff additional opportunities to gather evidence and to find an attorney. The ALJs applied the correct legal standards to the facts, considered all evidence presented, and did not demonstrate any hostility or bias in rendering their decisions. *See Card v. Astrue*, 752 F. Supp. 2d 190, 191-92 (D. Conn. 2010). Accordingly, the Court finds that these conclusory allegations, which are entirely unsupported by the record before the Court, provide no basis for relief.

Additionally, Plaintiff alleged that he received threatening phone calls from Benil Abraham, the attorney for the Commissioner, and that Abraham "make me sign a proposal which I did not know what I was signing." Dkt. No. 46 at 1 (errors in the original). In considering Plaintiff's allegations, ALJ Gale concluded "there is no evidence of a vendetta on the part of anyone against the claimant. In fact, the claimant has obtained favorable treatment from those he accused of a personal vendetta, including previously having received a waiver for an earlier overpayment associated with gambling winnings." Dkt. No. 51 at 161. Nothing in the record supports Plaintiff's conclusory assertions regarding Benil Abraham.

Lastly, Plaintiff requests that Carmel Sullivan, Paul Rejman, and Cathy Kruplarcz be "fired or suspended for a year with no pay." Dkt. No. 46 at 1. On February 5, 2013, the Court ordered that these named Defendants be dismissed from this action. *See* Dkt. No. 28 at 1. As such, Plaintiff's request is denied.

**IV. CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision is **AFFIRMED** and this matter is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 18, 2017
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge